THE MARION W. PAGE and THE MISSOURI.

(*District Court, E. D. Michigan.* January 18, 1888.)

1. COLLISION—BETWEEN SAILER AND STEAMER WITH TOW.
A propeller, with five barges in tow, bound down Lake Huron, upon a course nearly south, met a schooner bound up the lake, with a free wind, upon an opposite course. The schooner passed the propeller upon the port hand, at a safe distance, but, instead of keeping off, as she might have done, suddenly put her helm hard down, and endeavored to cut across the tow between the fourth and fifth barges. *Held,* that the schooner was solely in fault.

2. SAME.
Where a schooner, sailing with a free wind, meets a propeller incumbered with a long tow, the duty of avoiding a collision does not devolve wholly upon the propeller. The schooner is also bound to look out for herself, and take such precautions as the circumstances seem to require.

In Admiralty. Libel for damages.

This was a libel for collision between the barge Saginaw, then in tow of the propeller Missouri, and the schooner Marion W. Page, which occurred in Lake Huron, off Lexington, at about 7 o'clock in the morning of October 20, 1886. The libel averred, in substance, that the barge was the fourth of a tow of five vessels in tow of the propeller Missouri, and bound down the lake on a course nearly south; that the schooner Page, bound up the lake, on a parallel opposite course, with a free wind, approached as if to pass on the port side, but, after she had passed the Missouri, and when a short distance ahead of the Saginaw, she suddenly swung, as if under a starboard wheel, directly across the tow, and struck the Saginaw upon her port bow, not far from the stem. The answer of the Missouri did not differ essentially from the libel in its statement of facts, but denied all the allegations of fault made against the propeller. The answer of the schooner Marion W. Page averred that she, together

with the schooners John Kelderhouse, Newsboy, and Arthur, had just been cast off by the tug William A. Moore, and had shaped her course north by west up the lake, with a free wind; that about half past 6 in the morning the Missouri was seen coming down the lake, at a distance of three-quarters of a mile, and bearing a point upon the schooner's starboard bow; that the vessels continued on their respective courses until the Missouri suddenly, and when about two lengths off, hauled up and attempted to cross the Page's bow. "The Page, however, was kept steadily on her course until she approached the third barge of the Missouri's tow, when her wheel was ported sufficiently to clear the stern of this barge. After this had been done, her wheel was put to starboard, and the man on the third barge was called to let go the line to the fourth barge. This, however, was not done, and before the Page could swing sufficiently to clear the tow line she struck, and the fourth barge, which proved to be the Saginaw, came on without apparent change of course, struck the Page a heavy blow on her starboard side between the fore and main rigging, opening up her own bows, and leaving her port anchor hanging on the Page's rail. From the time the Missouri and her tow were first sighted, and until after she crossed the Page's bow, the latter was kept steadily on her course without variance, and after the Missouri had crossed the Page's course, the time and distance were too short for the latter to avoid a collision with one or more barges in the Missouri's tow." The court was assisted upon the argument by Commander Elmer, U. S. N., and Capt. Thomas Hackett, nautical assessors.

*Moore & Canfield,* for the libelants.

*J. W. Finney,* for the propeller Missouri.

*C. E. Cramer* and *H. H. Swan,* for the Marion W. Page.

BROWN, J., *(after stating the facts as above.)* We have found no difficulty in disposing of this case. The answer of the Page sets up an improbable state of facts, and the testimony discloses quite a different, but an equally improbable, defense, viz., that the tow was pursuing a south-westerly course down the lake, and so much across the course of the Page that the latter was unable, even with a free wind, to avoid coming into collision with the tow. Had this been the case, we are by no means certain that we should have exonerated the schooner from fault. While the general rule is unquestioned that a steamer, having vessels in tow, is to be considered as a steam-vessel, and bound to keep out of the way of a sailing vessel, this rule is subject to important qualifications, and in fact is of little value where a propeller, having four or five barges in tow, meets a number of sailing vessels, pursuing a different course, with a free wind. In such a case, it is clear, the sailing vessels are much better able to control their movements than the steamer, and it is but just that the duty of avoiding a collision should not rest wholly upon the latter. Such a case would seem to be an exceptional one, and falling within the twenty-fourth rule of special circumstances, rendering a departure from the general rules necessary in order to avoid immediate danger. *The Kingston-by-Sea,* 3 W. Rob. 152; *The La Plata,* Swab. 220; *The Arthur*

*Gordon,* Lush. 270; *The American,* L. R. 4 Adm. & Ecc. 226. But in this case we are entirely satisfied that the tow was upon the usual course of south by east, or south half east, from Pointe aux Barques to the St. Clair river. It is true, there is a great deal of conflicting testimony upon this point, and we cannot undertake to explain or reconcile the statements of the different witnesses. Aside from the general rule that the witnesses, upon a particular ship, are to be believed with regard to her course and maneuvers in preference to an equal number of witnesses upon another ship testifying from appearances, there is a strong probability that a steamer bound from one point to another will take the usual and shortest course between the two points; and in the absence of a showing of some good reason for a departure from the usual course, such as stress of weather, we feel ourselves safe in assuming that the usual course will be pursued. *The Alberta,* 23 Fed. Rep. 807. Now, the uniform course from Pointe aux Barques to the St. Clair river is south half east, or south by east, depending somewhat upon the variation of the compass or state of the wind; and when witnesses, who are not upon the tow, take the stand, and testify that the course of the tow was south-west, we have a very plain answer to their testimony. We simply do not believe them. It is utterly incredible to us that this tow, not having been driven easterly towards the center of Lake Huron by any stress of weather, and, there being nothing to show that she had gotten off her proper course from Pointe aux Barques to Port Huron, should be sailing south-westerly as she approached Lexington. Such a course would have carried her ashore in a very short time. We think, then, that we are bound to assume that the general course of this tow, from the time she left Sand Beach until the Page hove in sight, was south by east, and that the real question here is, what was the obligation of the Missouri when she made these four vessels? The testimony indicates that she first made them at a distance of seven or eight miles,—too far off to render it incumbent upon her to take any steps to keep out of their way. After they had approached within two or three miles of each other, two of these vessels appeared upon the port and two upon the starboard bow of the Missouri. It was evidently unsafe for the pilot of the Missouri at this point to port, because he would not only throw himself across the bows of the two vessels upon his starboard hand, but would endanger his running ashore. It was almost equally impossible for him to starboard without endangering a collision between his tow and the two vessels upon his port hand. He judged, and, we think, correctly, that, as there was an opening between the vessels, his better plan was to port slightly, and go between them. The two vessels upon his starboard hand kept their course, and passed between him and the shore. The Kelderhouse, instead of porting, as the master of the Missouri supposed she was going to do, starboarded, and, acting upon that hint, the Missouri also starboarded a little, and endeavored to make her way between the Kelderhouse and the Page. Now, we think, under these circumstances, the Page should have acted upon this intimation, and, while she was not bound to make any decided change in her course, she was bound to consider the fact that the tug was coming down

with a tow half a mile long, and should have looked out for herself to a certain extent, and kept away from the tow, as with a free wind she might easily have done. We think, if she had used ordinary care, she might easily have avoided the collision without violating the well-settled rules of navigation, but paying that regard to her own safety which is obligatory upon every vessel meeting another where any risk of collision is involved. The testimony shows that she passed within 1,200 feet of the Missouri. We think it entirely clear that if she had kept her course, or if she had kept off, as she might easily have done at that distance, she having a leeway between herself and the Missouri of 1,200 feet, she would have passed the entire tow in safety. The cause of the collision was the fickleness of the Page, or her apparent uncertainty with regard to what she ought to do. If she had fallen off, as we think she could have done without difficulty, she would easily have avoided the collision. She appears, however, to have allowed herself to get closer to the tow than was safe, and then, being in peril, and perhaps *in extremis*, she put her helm hard down, and attempted to cut across the tow. That was a desperate maneuver, and one which could hardly have failed to result in disaster. The only excuse given for it is that the master was afraid that if she jibed she would take the masts out of her. But it is suggested to me by the experienced gentlemen who have advised me in this case, that if she had dropped her aftersails, or the peak of her mainsail, she might very easily have fallen off without jibing; and even if she had jibed, it would not have injured her masts or yards. It seemed to me from the first that there could be but one result to this case, and I see no reason to change my mind in that regard. An order will be entered adjudging the schooner Marion W. Page solely in fault for this collision, and referring it to a commissioner to assess the damages. The libel as against the propeller Missouri will be dismissed, with costs.